216 A.2d 134.
FRED M. LANGTON, *Tax Adm'r of the State of Rhode Island* vs. BRADY ELECTRICAL CO., INC.

JANUARY 18, 1966.

PRESENT: Roberts, C. J., Paolino and Joslin, JJ.

ROBERTS, C. J. This action in assumpsit was brought by the state tax administrator to recover from the defendant corporation a sum of money alleged to be due the state by the assessment of a use tax under the provisions of G. L. 1956, chaps. 18 and 19 of title 44. The case was tried in the superior court to a justice thereof sitting with a jury, who denied the defendant's motion for a directed verdict and granted the plaintiff's motion for such verdict in the amount of $19,699.52. The defendant subsequently moved in arrest of judgment, and the court denied this motion. The case is now before this court on the defendant's exceptions to these rulings of the trial court.

It is not disputed that defendant, hereinafter sometimes referred to as the taxpayer, acquired, stored, and used certain electrical equipment in the city of Providence and, in the performance of its obligations as a subcontractor in the erection of a building to be used as a post office, installed this equipment therein. The taxpayer concedes that it filed no monthly returns concerning these activities under the provisions of G. L. 1956, §44-19-10.

Thereafter, no such returns having been filed, the administrator, proceeding under the pertinent provisions of §44-19-14, made a determination of the taxes due the state and on July 26, 1961 gave the taxpayer notice in writing of the amount of such determination and of the requirement

of §44-19-16 that it be paid within ten days after the mailing of such notice unless, as provided in §44-19-17, the taxpayer in writing claimed a hearing in review of such determination within ten days after mailing of said notice.

The record discloses that on July 28, two days after the mailing date of the notice of determination of the tax, the taxpayer in writing requested an extension of the period within which it would be required either to pay or to claim a hearing under the statute. On August 12 the administrator notified the taxpayer in writing that the period was to be extended until August 18, 1961. Thereafter no further communication between the taxpayer and the administrator was had, and on January 9, 1962 the administrator began the instant suit for the collection of the assessment above referred to.

The defendant moved to nonsuit plaintiff on the ground that an action in assumpsit cannot be maintained for the recovery of a tax. This motion was denied by the trial justice. In *Conroy* v. *Equitable Accident Co.*, 27 R. I. 467, we held that objection to the form of an action may be taken by way of a motion for nonsuit. The rule posits, however, the institution of an improper form of action, and we are unable to agree that the action here brought was not proper in the circumstances.

The defendant overlooks the legislative creation of a statutory form of action of the case for the recovery of the amount of taxes due the state. Section 44-7-12 provides specifically that "The collector of any tax may recover the amount thereof in an action of the case against the person taxed, if a resident of this state, and in the declaration it shall be sufficient to set forth that the action is to recover a specified sum of money, being a tax assessed against the defendant, specifying the town in which said tax was assessed and the time of ordering and assessing the same." This establishes a statutory form of action available to all tax collectors generally for the collection of taxes due, and

an examination of the writ and the declaration in the case at bar discloses that there was full compliance with the provisions thereof by plaintiff. It is then our conclusion that this contention of defendant is without merit.

The defendant in this court makes a twofold attack on the assessment, arguing, first, that the tax was invalidly assessed by reason of the administrator's failure to comply with the statutory provisions controlling the making of such a determination under §44-19-14. The second contention of defendant is that the procedural provisions of the legislation are unconstitutional in that they operate to deprive it of property without due process of law. We are of the opinion, however, that the antecedent question is whether defendant may in this court be heard to attack either the administrator's compliance with the provisions of the statute providing for the making of the determination or the constitutionality of the procedural provisions relating to administrative and judicial review, it being conceded that it failed to avail itself of the remedies set out in the statute, which include provisions for an administrative review of the correctness of the assessment and for a judicial review of the action of the administrator with respect thereto.

Section 44-19-16 provides that "Unless a hearing shall have been requested as provided in §44-19-17, any determination made by the tax administrator * * * shall become final and shall be paid within ten (10) days after mailing by the tax administrator of the notice of such determination." In other words, the tax assessed under §44-19-16 becomes final ten days after notice of the determination is mailed to the taxpayer by the administrator unless an administrative review as to the correctness of the assessment thereof is claimed under §44-19-17.

In §44-19-17 provision is made for an administrative review of the correctness of the tax. That section reads, in pertinent part: "Any person aggrieved by any assessment,

deficiency or otherwise, shall notify the tax administrator in writing within ten (10) days from the date of mailing by the tax administrator of the notice of such assessment and shall request a hearing relative thereto; and the tax administrator shall, as soon as practicable, fix a time and place for such hearing and shall, after such hearing, determine the correct amount of the tax * * *."

The judicial review of the assessment by the administrator is provided for in §44-19-18 which, in pertinent part, reads: "After a hearing, and provided all taxes * * * as determined by the tax administrator have been paid, any person aggrieved by such determination may, within fifteen (15) days from the date of mailing by the tax administrator of such determination, petition the superior court for the counties of Providence and Bristol, setting forth the reasons why such assessment is alleged to be erroneous and praying relief therefrom; and the clerk of such court shall thereupon issue a citation * * * to summon the tax administrator to answer said petition, and the court shall proceed to hear said petition and to determine the correct amount of the tax * * *."

The administrator, referring to the above statutory procedures providing for a review of the assessment, contends that in this action to collect the tax defendant is without standing to challenge now the assessment thereof or the validity of the legislation authorizing it. The question that he raises is, in our opinion, whether in an enforcement proceeding a defendant may attack collaterally the action of the assessor where it did not invoke the procedures provided in the statute for direct attack upon the assessment or the legislation under which it was made.

In these circumstances it is essential that we distinguish the instant case from those in which the doctrine of the exhaustion of administrative remedies has application. In *United States* v. *Fritz Properties, Inc.*, 89 F. Supp. 772, the court said at page 777 that the doctrine of exhaustion of

remedies "is a product of judicial self-limitation resembling the requirement of equity jurisdiction—that a litigant has no standing in equity where he has an adequate remedy at law—although matters of comity and need for orderly administrative procedure helped shape the doctrine." See *Smith* v. *Highway Board,* 117 Vt. 343.

The instant case, in our opinion, is not one which involves the doctrine of the exhaustion of administrative remedies. The situation here is one in which the legislature, obviously to protect the constitutionality of the legislation, provided not only for an administrative review of the correctness of the assessment but for a subsequent judicial review of the action of the administrator when the result of the administrative review was unsatisfactory to the taxpayer. The statute provides a complete remedial procedure wherein the correctness of the assessment and the validity thereof may be attacked and is significant, in our opinion, of a legislative intent to make these the only remedies available to a taxpayer. Because we take this view, it is our conclusion that the superior court in the instant case was without jurisdiction to pass upon the correctness of the assessment, defendant having failed to avail itself of the statutory procedures established by the legislature as the only method by which such an issue may be tested. *State ex rel. Employment Security Comm'n v. Kermon,* 232 N. C. 342, 349.

Whether a collateral attack on issues of constitutionality may be made when the defendant failed to pursue statutory remedies expressly provided for in the legislation is a question upon which there is little unanimity of opinion. There appears to be considerable confusion in the cases between the applicability of the doctrine of exhaustion of administrative remedies and the undisputed authority of the legislature to confer exclusive jurisdiction on an agency acting quasi-judicially or on a judicial tribunal to hear and determine appeals from the action of an administrative agency.

372

That there is a conflict of authority as to whether a litigant can raise a question of constitutionality in a judicial tribunal in situations where he failed to resort to prescribed administrative procedures is expressly recognized in *Weir* v. *United States,* 310 F.2d 149, 157. The court in that case referred to *Miller* v. *United States,* 242 F.2d 392, and to *United States* v. *Kissinger,* 250 F.2d 940, as reflecting the contrary views on this proposition.

In *Miller* v. *United States, supra,* the court, noting that a defendant in an action to collect penalties under agricultural production control legislation had failed to resort to statutory remedies, said at page 395: "Moreover, defendant's inaction precludes him from raising his constitutional questions, for these questions clearly bear upon the 'legal validity' of the determinations."

In *United States* v. *Kissinger, supra,* the action was to recover penalties assessed under agricultural production control legislation. The court, noting that the defendant had failed to apply to a review committee for an adjustment of his marketing quotas as provided in the act, said: "We do not think that Congress, by stipulating in the Act for the review of a farm marketing quota by a review committee, can prevent an aggrieved farmer from raising the question of the Act's constitutionality for the first time in the district court as a defense to an action for penalties under the Act. For the question of the constitutionality of the Act is quite a different question from whether the farmer's quota is proper * * *."

We are persuaded that in the latter case the court recognized that an administrative review of the designation by an agency of a marketing quota was strictly administrative in character and that the legislation made no provision for a judicial review of the agency action establishing such quota. It appears, in short, to us that if the rule that a failure to resort to a remedial procedure bars collateral attack of this kind is to be justified at all, it must be on

the basis that the statutory remedies provided have some form of judicial protection for the taxpayer or other defendant, in which constitutional questions could have been properly raised. It is fundamental that the concept of due process requires that legislation impairing property rights provide the citizen with an adequate opportunity to secure judicial protection against possible arbitrary agency action. *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 49.

We inquire then as to whether the provisions of §§44-19-17 and 44-19-18 afforded this defendant an adequate opportunity to secure such judicial protection against arbitrary action on the part of the administrator and thus conformed to the requisites of procedural due process. The legislation initially provides the taxpayer with a procedure for obtaining an administrative review as to the correctness of the assessment. This review may be had without any requirement that the tax be paid under protest if claimed within ten days of the mailing of the notice of the assessment. The legislation further provides that if the outcome of this administrative review is not satisfactory to the taxpayer, he may within fifteen days after the mailing of the notice of the administrator's determination at the hearing under §44-19-17 petition the superior court for a judicial review of the administrator's action, payment of the tax under protest now being required as a condition precedent to the right to this review.

It may well be, as defendant argues, that the time limit within which he may claim an administrative review before the administrator and thus qualify to subsequently claim judicial review is indefinite and of short duration. We are unable to agree, however, that it is so indefinite or so brief as to warrant its being found not to afford the taxpayer an adequate opportunity to secure ultimate judicial review on the question of the validity of the assessment. It is our opinion that the provisions of the legislation under which the assessment was made which provide for a judi-

cial review of the administrator's action do not violate the principles of procedural due process and that, therefore, the procedures set up in the act affording such judicial review were not invalid. We, therefore, conclude that defendant cannot in this circumstance be held now to have standing to attack collaterally the validity of the legislation, having failed to invoke the statutory procedure for obtaining such review.

In *Commonwealth* v. *Lentz,* 353 Pa. 98, a statute providing for the assessment of unemployment compensation contributions provides also that an employer, if dissatisfied with such an assessment, may within fifteen days of receipt of notice of the making thereof claim a reassessment before the department of labor and industry. If the employer is dissatisfied with the reassessment, he may as of right appeal to the court of common pleas of that state within thirty days after receiving notice of the action of the department. The defendant in that case in an enforcement proceeding sought to attack collaterally the validity of the assessment without having availed himself of the statutory procedures above referred to. The court said in part: "Due process of law is not denied when prescribed administrative procedure is faithfully pursued upon due notice and with an opportunity to the party to be charged to be heard before the matter becomes final and a right to court review." We agree with the conclusion reached by the court as stated above and hold that the defendant in the instant case was not denied due process and is, therefore, without standing to challenge now the constitutionality of the action.

All of the exceptions of the defendant briefed and argued are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*J. Joseph Nugent,* Attorney General, *D. A. St. Angelo,* General Counsel, Division of Taxation, Department of Administration, for plaintiff.

*William E. Parmenter, Jr.,* for defendant.