346 A.2d 655.

PAUL ARPIN VAN LINES CO. *vs.* JOHN H. NORBERG,
*Tax Administrator.*

NOVEMBER 5, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is a statutory petition for certiorari which was initiated pursuant to the relevant provisions of the Administrative Procedures Act, G. L. 1956 (1969 Reenactment) §42-35-16. The petitioner is the Tax Administrator of the State of Rhode Island. He seeks reversal of a Superior Court judgment which reversed his determination that as of February 23, 1973 the respondent owed a use tax which together with interest and penalties amounted to $14,728.60. Hereinafter we shall refer to the

petitioner as the "Administrator" and the respondent as "Arpin."

The record that has been provided to us pursuant to our writ shows that there is little disagreement as to the facts relating to this litigation. Arpin is a Rhode Island corporation with its offices located in Providence. It is a duly certificated motor carrier, authorized to transport household goods between all points within the continental United States. Arpin provides its service through approximately 230 motorized movers who act as its agents. All agents are located outside Rhode Island. The interstate shipments move on Arpin's bills of lading and are subject to the tariff of rates and charges, filed by Arpin with the Interstate Commerce Commission.

In the course of its business, Arpin purchases corrugated fibre containers and excelsior which are a necessity for the safe transportation of its cargo. Once a shipment is completed, the packaging materials are retained by the customer or destroyed. They are not returned to Arpin or its agents or resold by the customer.

Arpin buys the cartons and excelsior in carload lots thereby obtaining them at a substantial discount. The sale takes place out of state. The containers arrive and leave Rhode Island in a disassembled condition. The materials are then forwarded to each of Arpin's agents on trucks which travel from Rhode Island to the agents' headquarters. There the cartons are put together, the customer's furnishings properly cushioned by the excelsior are then placed in the cartons, and the packaged goods are transported to their ultimate destination. Arpin makes no profit on the cartons or the excelsior. It charges its agents the exact cost of the packaging materials plus a 5 percent handling charge. Ninety-nine percent of Arpin's transportation business takes place outside Rhode

Island.[1] The only factual disagreement occurred when Arpin's counsel informed the hearing officer that the packaging materials remain at Arpin's warehouse for no more than two or three days before it resumes its travels. When the tax division's attorney mentioned that it was possible that some of the material remained here for a longer period depending upon the point of origin of the transporting vehicle, both counsels agreed that the storage in Rhode Island was "temporary."

The Administrator looked upon Arpin's activities with the commerce clause of the Federal Constitution in mind. He found that there was such a use and storage of the material in Rhode Island as to constitute a sufficient stoppage in the interstate flow of the goods as to justify the imposition of the tax. The trial justice agreed that the facts established a "use" under the taxing statute but found that the General Assembly had specifically exempted such a use from taxation. We affirm the ruling of the trial justice.

Arpin's appeal, both at the administrative and the initial judicial level, was considered prior to our holding in *Safeway Systems, Inc.* v. *Norberg*, 115 R. I. 127, 341 A.2d 47 (1975). Safeway was an interstate mover who sought a tax exemption for the packaging it used to protect its cargo. It assembled its cardboard cartons in Rhode Island, placed the furniture in the cartons in Rhode Island and thereafter the packaged goods entered the interstate commerce flow from Rhode Island. We ruled that Safeway's activities constituted a taxable use and the Administrator acted properly when he imposed a tax.

In *Safeway,* we construed §44-18-11 as giving an exemption to goods in interstate transit which stop in this

---

[1]The Administrator invoking the principle of de minimis makes no claim for the intrastate use of the containers and the excelsior.

state for a short period of time before resuming its journey to points outside Rhode Island. In other words, the exemptions granted by §44-18-11[2] only apply to tangible personal property which is shipped or brought into Rhode Island, stored here temporarily and then withdrawn from storage to be used solely outside this state. The temporary storage and the withdrawal of the goods is not a taxable event if the property in question is to be used exclusively outside Rhode Island. Arpin's activities, unlike Safeway's, falls foursquare within the exclusionary language of §44-18-11. The sole purpose for the short sojourn of Arpin's packaging materials in Rhode Island is to await transportation and use beyond Rhode Island's borders. The trial justice viewed the evidence and law in this light and he was correct.

The petition for certiorari is denied and dismissed.

*Arcaro, Belilove & Kolodney, Abraham Belilove; Zelby, Burstein, Liberstein & Hartman,* New York, *Herbert Burstein,* for plaintiff-respondent.

*Julius C. Michaelson,* Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for defendant-petitioner.

---

[2]General Laws 1956 (1969 Reenactment) §44-18-11 in pertinent part reads as follows:

"'Storage' and 'use' do not include the keeping, retaining, or exercising of any right or power over tangible personal property shipped or brought into this state for the purpose of subsequently transporting the same outside the state for use thereafter solely outside the state * * *."